This meeting is no longer being recorded. Your meeting has ended. We will let this clear out for a minute. All right, I think we're largely cleared out. Our second case for this morning is Evans against Portfolio Recovery Associates and other consolidated cases. Mr. Schultz. My name is David Schultz, and I represent the Appellant and Portfolio Recovery Associates, often referred to as PRA. These four cases before the court have pretty similar fact patterns. Each of these are ones in which PRA is a debt buyer. It's a publicly traded company. It's one of the larger ones in the industry. Purchased debts from original creditors. Sears, Bank of America, credit card companies. It sent out the required 1692G notice, the validation notice as it's referred. No response was made to that letter. The law provides that if a person wants to dispute the debt or a portion thereof, in 30 days they can write in and then the debt collector will cease. We'll verify the information, provide the information. That didn't happen here in their portfolio. This case is not a complaint. I'm sorry. This case is not a complaint that you continued with debt collection efforts. This is just a case saying that when the sentence or when the phrase and the amount reported is not accurate is included in the letter, that when you report the delinquency to one of the major credit reporting people, you have to include the sentence and the amount is disputed. We're saying that. I'm just saying you're making a point which is true enough but irrelevant, you know, that you sent the letter and you didn't get the 30-day dispute and so you were then free to continue collection. But nothing in the Fair Debt Collection Practices Act says that when you choose to communicate the credit information to somebody, that you are somehow exempt from saying this disputed debt is disputed or this is a disputed debt. That's where we are. Actually, the law allowed us to assume it was valid. No, but it didn't. And the debt itself was. It did for purposes of collection. Yes. But it did not for purposes of communication. Right. The phrase and the amount reported is not accurate appears in each of these four letters. I mean, by now, I think we have six district judges who've all read this language basically the same way. Well, that's one point. We said there's a couple points. So can you tell me whether you think this language is ambiguous or whether your position is that you never bothered to read the letters or what really is your. . . No, I think the testimony was that it was ambiguous. That our client has trained personnel to deal with disputes. They deal with disputes every single day. What's ambiguous about saying the amount reported is not accurate? Doesn't that mean you're not. . . They're not disputing the debt. No, but they're saying it's not $1,200, it's $400. They didn't say any of that. They said the amount reported is not accurate. They didn't put in details, but the statute doesn't require details. Correct. I share my colleague's question. Is it that you've got software that's looking for the word dispute rather than synonyms like not accurate? No, no, it's not that at all, Your Honor. What's the difference between the phrase the amount is disputed and the amount claimed is not accurate? To answer the question, I think, you're asking was it ambiguous? Yes. You're saying to judges, certain judges. . . Explain for us, and that was the question. What is the difference to a normal speaker of English between saying the amount reported is disputed and the amount that you reported is not accurate? First of all. . . What would a normal speaker of English understand differently in those two? EA talks about disputing the debt. The debts are not disputed. They owe the money. The amount reported is not accurate. Right. And so some judges have said that equals a dispute, but I am saying that a judge could read that and interpret it that way. I could read that and interpret it like a lawyer, but we're talking with an agency. Are you saying the statute requires an all or nothing? That if somebody is trying to collect a $1,200 debt and the person thinks they really owe him $400, they have to either say we don't have a debt to you at all or we admit that it's $1,200? Because it sounds to me like that's what you're saying, which seems also absurd to me since very often people do have more nuanced disputes. There's a couple ways to address that. First of all, 692G talks about disputing the debt or a portion thereof. Or a portion thereof. G, G does, even say that. E talks about disputing the debt. If you're in that situation, Your Honor, the process is under the Fair Credit Reporting Act. If you're disputing a portion of the debt or the debt, you would go and make a dispute under the Fair Credit Reporting Act. We are not on the Fair Credit Reporting Act. The plain language, I hate to use that term, but this time it really applies, prohibits a debt collector from, quote, communicating and so on to any person credit information which is known or which should be known to be false, and then Congress takes the extra step, including the failure to communicate that a disputed debt is disputed. So when you contacted Experian or TransUnion or whoever you contacted, all you had to do was say, so-and-so has a debt of X dollars. So-and-so disputes all or part of that debt. Well, you would note a dispute line as the debt. All right. Click. Dispute. I mean, you know, it's easy to say it's disputed. To answer your first question, if I could. A judge and I could interpret that, but I'm saying that the people that were trained to handle these disputes and who handle disputes on a day-to-day basis didn't see it that way. I don't buy that at all. And Mr. Finko knows. They said it was legally insufficient. That's what your 30B6 witness said when finally pressed. It wasn't a clear dispute. It wasn't a clear dispute. When they get lawyer letters, they testify. They know what a dispute is. Mr. Finko knows what a dispute is. The amount reported is not accurate. Are you really going to stand here and tell me that none of us knows what that means? It could be treated as a dispute. What I'm saying is the people that got it did it. It could be treated as a dispute. So the next part of it, though, is does it rise to the level of a violation when? The evidence is the amount was exactly accurate. Well, we don't know that. We do know that. No, we don't. We provided it in the record. It's part of the Rule 56 statement. You need to report the dispute, and then presumably there's a follow-up later on. Where in the statute does it say that the debt collector gets to decide for itself which disputes are going to prove to be not well taken and which disputes are going to prove to be valid? I don't see that in the language of the debt collection practices. We're talking about a credit report, right? We are talking about Section 1692E-8. Right. And the consequence is what's on the credit report. So the question is where does it say in 1692E-8 that you only need to communicate a dispute if you think that the consumer may win? We're not taking that position, Your Honor. Our position is that does it rise to the level of a fair debt violation? I don't even know what rise to the level means. I don't know how high a violation is. Let me ask you a question that sounds like a question from the last case, which is are there any interpretations of this phrase in regulations to which we owe some respect by the Fed, by the FTC, by the Consumer Financial Protection Bureau that would say either what language you need to use to trigger this obligation or whether you need to supply any details about what is disputed and why. Are there any such regulations? I'm not dealing directly with EA, but there certainly are in dealing with kinds of disputes under the consumer laws. For instance, under GE. You say there certainly are. What regulations are you referring to? I would love to go look at them. I don't think it's a regulation. There's a certain process. My question is are there regulations? The answer to that is yes or no, and if yes, I would love to know why not. I'm not aware of a regulation that interprets that portion. Okay. Thank you. But when you talk about rise to a level, it does come up. In the Turner v. JVD case from this court, you had a situation where the debt collector was sending letters to a person who did not owe the debt because they'd gone through bankruptcy, and the trial court said that was a violation as a matter of law. And your Honor said, in its opinion, no, it's not a matter of law, a violation. It's whether or not a reasonably unsophisticated consumer would think of it that way. Even though, yes, the person did owe the money, and, yes, they got a demand letter, you'd still have to interpret it. Does it rise to that level? That's why you also have, so that's an example of that situation. You also have a number of cases under this section, E, Section E, dealing with materiality. Does it rise to the level? And what we're saying is if we- What are you relying on? I guess I still am stuck on the fact, and some of the district courts said, that when Congress has specifically spelled out a duty to do something, in this case, if the consumer has disputed the debt, you have to flag it as a disputed debt when you pass it along to one of the big credit reporting people. I don't understand when you just don't do that, why that isn't just a violation of the law. Well, your honors have said that many times, though. You said it in the Turner v. JVDP, the Taylor case. Where? The situation in Turner was quite different. It wasn't. There was not a clear duty. Yes. Yes. You can't seek to collect money that's not owed. That money was not owed, and your courts said- That is a more subjective thing. This is only about has somebody disputed the debt, and you are reading into that, and they are likely to win. And I don't see that Congress put, and they are likely to win. What I'm saying, that's one way to read it, yes. But I'm also saying- The way you're reading it, I think. Well, I'm also reading it to say, is it a violation, though, as a matter of law, or is it material when the information that was reported was absolutely 100% correct? There is nothing wrong with the amounts. They did owe debt. We had billing statements about it. Everything else. So, yes, just like under E, Your Honor, when you have a section, don't collect an amount not owed, and a person goes to bankruptcy, and they don't owe anything, you still said, well, what happens? Does the person reasonably think they owe it? I tried that case twice, and I won both times. The Finder of Facts said it didn't rise to the level of violation.  It's a different part of the statute. It's still E. That's what I'm having trouble with. But it's still E. It's not E8. It's not this duty to communicate that a dispute of debt is, in fact, disputed. You want a rule that says when a consumer in bad faith throws that sentence into the letter, that the duty to communicate the dispute doesn't exist. I'm not saying that. I'm not saying that. Well, what are you saying then? What I am saying is it doesn't rise. If the information is actually accurate, my client shouldn't be held liable in that situation either. I just want to say that there's, at least in some of the cases, some dispute about whether it was accurate. We gave the billing statements that all show that exact amount. The charge-off statements that show that amount. The chain of title that showed that amount. What they said is, well, we thought it was different. It was speculation at best. What they said, we gave them evidence. Every time, there is no doubt. They can't get up here and say that. They did say, you don't dispute, though, that they did say in the letters, actually six letters, four letters, whatever, the amount reported is not accurate. The lawyer said that. Yes, absolutely. So, the lawyer said that. And you think that's not enough to show that there's a dispute. What I'm saying, no. That's what you said. Because if it is enough to show there is a dispute, you have to comply with the law. Let me clarify. What I'm saying is, one, it could be a bonafide error. Two, it may not be material. But three, should there be liabilities attached to my client for what they conveyed? I'm not saying it's disputed. You can collect to your heart's content. You can do all sorts of other things. And could it be found to be a material violation of the law when the information they reported was absolutely accurate and there was no consequence of this? Not one person was denied credit. Not one person. Well, that's a different argument. That's your Spokio argument. And I think credit report, you know, when somebody has a negative credit report, it has all sorts of effects that they may not even know about. Employers look at credit reports. Professional associations look at credit reports. Landlords look at credit reports. Other issuers of credit cards look at credit reports. But, Your Honor, in every instance, if the amount of the debt was accurate and there's no evidence that anybody's credit report was looked by anybody, that there was any negative consequence of it, that their credit score went down, I've got clients. There's lawsuits that have been filed in this courthouse where people sent communications, talked to debt collectors, and the debt collectors interpreted that as a dispute and then get sued because they updated the credit bureau for being a dispute. They said, It wasn't a dispute. I wasn't saying that. So it's a fallacy to assume that just because it was or was not noted as a dispute, there was some kind of harm to the person's credit. That sounds to me like you just don't like the statute. I don't think that liability should be attached. I haven't met a debt collector yet who does like the statute. That's not true at all, Your Honor. Oh, you do like the statute? Yes. They want to be treated fairly. If they comply with the law, they shouldn't attach liability. Mr. Finkel knows how to write a dispute letter. They send hundreds of these and generate hundreds and hundreds of lawsuits. If that group has generated over 500 lawsuits largely based on letters like this that were or were not interpreted correctly or were not handled, in their mind, fast enough, what I'm saying is that the Fair Debt Collection Practices Act shouldn't attach liability when the information that the client has is accurate, is 100% accurate, and for a few different reasons. One, if a report is disputed, the fair credit report, if you went through the right process, the right process to challenge a dispute is to go through the credit report. You make a dispute, and the credit report will then investigate it as a required torrent at FCRA. They will ask the furnisher, PRA, to investigate it, and PRA will look at its records, and they'll determine that it's accurate, and they'll report that back, and it will be noted as an accurate account. They're trying to short-circuit that and create liability on the FDCPA, even though they know they couldn't go to the credit bureaus to get the dispute on there. They couldn't do that because it's right. It's the right information. And so what I'm saying is it shouldn't rise to the level under many courts and in many cases you've had, Turner v. J.B. being the best example and the one I handled and tried twice and won, or under any of your materiality cases, which dealt with specific requirements, specific requirement not to collect the money not owed. That's one of the requirements. Not to misrepresent the amount, and in those cases when they did try to collect the amount not owed, or they did try to, or they did misstate the amount of the debt, you found it was not a material violation. That's what we're asking for in this instance. Find if they should have viewed it the way a judge or a lawyer viewed it as a dispute, and they didn't, and it's accurate, though, they shouldn't attach liability either, because it doesn't rise to the level, or it's not material. There's no evidence that whether they would have noted it as a dispute would have mattered one way or the other. And, in fact, it would have been false information. What's the credit bureau there for? It's supposed to accurately reflect the person's credit and credit history. If you allow false disputes on there, not that they didn't have or think or thought of a dispute, but it would have been the inaccurate information because it was accurate. That is not a justice to the people that are looking at the credit reports, to the employers that are looking at it. There's a way to go through that process. It's the Fair Credit Reporting Act. Not this way. And if nothing else, then we have a bona fide error. Yes, we have clerks that viewed it. They processed it. They did so timely. They looked at it. They treated it as a lawyer. That was like a legal assessment, actually, rather than a factual assessment. Nobody's disputing the words in the letter, and you didn't argue that no one bothered to read the letters. I didn't argue that. No, absolutely. They did read it. It's not a law. They weren't looking at the law. They were looking at the letter. They were trying to figure out how to treat it. They treated it as a lawyer. They did, and they updated it. They honored 692C by doing so. They treated it as a cease. They stopped, actually. It worked. Mr. Finkel got them to stop. They stopped in each of these instances. They didn't seek to collect another cent from these people, even though it was a lawful debt and it was owed. They stopped. So they processed it largely correctly, and nothing further happened that way. It sounds like they did it upside down. As the Chief Judge said earlier, there was nothing that stopped them from collecting these debts. The failure to respond to the verification notice meant that they could collect, but they had a different obligation under a different rule to say things or not to credit bureaus. It sounds like they just got it backward. They stopped the thing they could continue doing and did the thing they weren't supposed to. That's not a bona fide error. That's just the computer has been programmed backward. Well, now you shouldn't criticize or punish them for stopping to collect the debt. We're not punishing them for that at all. We're just, because we're focused on the one requirement that this case is about. But if you'd like to save a little bit of rebuttal time, maybe, it's up to you. On that bona fide error, though, the test is, well, why did they stop? Did they intend to violate the law? No, they did not. Why would they possibly do that if they have a department set up to handle these and they do handle them on a daily basis? Do they have a bona fide error? Yes. I'm sorry they did not interpret it the way the federal judges did interpret it, but they did interpret the letter. They did do this. They did process it. It was a mistake, perhaps, that they didn't update the bureaus, but it wasn't intentional. It was a reasonable mistake. They could view that differently than you did. And you've said that many times. Don't put the judge's role in there interpreting these letters. And I think if I got a chance in front of a jury, I could win that issue. I've won it before, and I think I would have won it this time. And at least it should be a question of fact. Do they have a reasonable procedure? It's a pretty good procedure. They've got people devoted to this. They have fax machines devoted to this. It didn't go to those fax machines, but they still processed it. These are reasonable procedures. So, at least, I should get a trial on this issue. Does it? Is it material? Is it a bona fide error? I do want to save the rest of my time. All right. That's fine. All right. Mr. Helicki. Good morning, and may it please the Court. The district courts correctly ruled that PRA violated 1692E8's simple bright-line rule. The dispute letters PRA received from each plaintiff were short, plain, and expressly stated, as the Court noted, that the debt amounts being reported were, quote, not accurate. Each letter was sent to PRA's general counsel, a sophisticated audience, who evidently recognized the letters for what they were, because then they forwarded the letters on to PRA's disputes department for handling. Yet months later, PRA reported the debts as not disputed on the consumer's credit reports, violating the plain language of 1692E8. Plaintiffs were entitled to have their disputes reported as such on their credit reports. Counsel's argument that the debt turns out to be valid, or the amount turns out to be proven correct in a small claims court, that somehow that obviates, that takes us back in time to when the dispute was actually made, doesn't make any sense. You know, until the debt is determined to be, until the dispute is resolved, either by a court or by the parties by agreement, the plaintiffs and the consumers are entitled to have their dispute of the debt registered on their credit report for the rest of the world to see when looking at their credit. This is also supported by this court's decision in DeKoven v. Plaza Associates, which acknowledged that the consumer, agreed to the statement that the consumer has the right to dispute the debt for any reason or no reason at all. So you, I mean, some of these consumers did have some understanding that there was something that seemed wrong about the number, because their credit limit was significantly lower. Now, it did strike me that in some instances, maybe this was reconcilable because of interest and penalties and the like mounting up. But it has to be your position that that's for later on in the process, that you still have to report the dispute. Absolutely, Your Honor. And yes, each plaintiff, not just a couple, all of them testified. Ms. Evans testified that the amount was more than triple her $400 credit limit. She actually statistically said, I didn't charge all that stuff. Ms. Paz, there's a language barrier with her because she had to be translated through her daughter. But she thought it was more than, the amount was more than double the $400 she owed, or that she thought she owed. Ms. Gomez thought that the debt amount being claimed by PRA exceeded her credit limit. And Mr. Baus thought the amount was too high, but he was unable to figure it out, because the debt was so low that he had lost the original statements, or statements from the original creditor. Were any of these debts the kind of debts that we sometimes see where the statute of limitations has expired? How old is so old for Mr. Baus? Yeah, I don't know that the record reflects whether the debt was that old, but it was old enough. I mean, people don't hold onto their card statements or what have you for years at a time. Some don't, I should say. I shouldn't say nobody does, but some don't. And in this case, for whatever reason, he didn't have them. And that's a perfectly good reason to dispute a debt. I think it sounds high to me. I can't show that it's not right now. And so I'm going to dispute it until we sort this out. It's important to note that PRA itself, although it bought the debts, it didn't originate the debts, so it didn't know for a fact that the debt amounts were correct. I mean, it's relying on the records of somebody else that may or may not be good. And they chose not to pursue the matter, so they dropped it. So all that's left is the debt is disputed. They never demonstrated that the debts were owed and the exact amounts being claimed. They never demonstrated that disputes were invalid to begin with. So I assume at the end of the day, though, after some process, if this had happened the way it should have, in your view, and the disputes had been recorded with the various credit bureaus, then there would have been some further process to resolve the debts and a follow-up report would be filed with the credit bureaus. Is that the way it works? Sure. Or PRA could have chosen to do what it did, which is eventually say, we're just going to let this go, either for whatever reason, maybe because they really didn't think they could collect the debts and they couldn't prove that they were valid. But, yeah, if they took the case to judgment, for example, in the small claims court, then a judgment would show up on the credit report. By the way, their position that you have to resolve the validity of the debt would turn the federal district courts into basically a small claims court because we'd have to litigate the validity of these debts to conclusion to determine whether or not the disputes were valid in retrospect. So, obviously, that would be an unworkable solution. The district courts also correctly ruled that the violation was material here because, in the words of this court, a material violation, I'm talking about Ginettos v. Fulton, is conduct that, quote, the act was intended to eliminate. Now, plainly the act was intended to eliminate the conduct at issue here because it violates an express provision of the statute, E-8, which obviously bars debt collectors from reporting disputed debts on the consumer's credit. Well, I always get a little edgy about the word obvious. That's one reason why I asked Mr. Schmaltz whether there were any regulations by the Fed, the FTC, the Consumer Protection Finance Bureau. He said he didn't know of any. Do you? No, Your Honor, I'm not aware of any regulations that address this specific point. Well, I could certainly imagine a rule that said if the dispute appears to be frivolous or if there are no details given, the debt collector can ignore them. And I can imagine the opposite. But if there is no rule, there is no rule. Yeah, we're left with the plain text of the statute, which simply says dispute. We are. So we look at whether we have an objective dispute language. We do here. In fact, actually, their own collection manual says, for example, that the customer does not have to provide a reason for the dispute, nor does the customer have to say the word dispute in quotes. What are you quoting from? I'm sorry. The Disputes Department Supplemental Training Manual, page 3. What does that have to do with the meaning of the statute? Well, I'm saying that the PRA acknowledges what the statute says. No, no, no, no. If you are a debt collector, you would instruct your staff to stay as far away from statutory liability as you can. That doesn't concede that a particular thing violates the statute. We'll figure out what violates the statute. Or the Consumer Protection Finance Bureau could issue a regulation saying what violates the statute. But internal operating procedures are totally irrelevant. Except as it pertains to the bona fide area of defense, I suppose. I understand Your Honor's point. But in addition to violating an express provision of the statute, making it material per se or a misrepresentation under section 1692E8, it also goes to the plaintiff's credit rating. It can give the debt collector unfair leverage over the consumers because they don't want this debt sitting on their credit report for the world to see and thinking, well, here's a debt. It's just sitting there. It's not disputed. They're not paying it. So are they a deadbeat? What's going on here? So people have a right to have that information. The fact of the dispute correctly reported as a material violation. The district courts also correctly rejected the bona fide area of defense. We respectfully submit that the debt collector here can't meet any element of the defense, let alone all three. The violation was not unintentional or not intentional. They didn't prove that. They just say it. But PRA chose to omit the disputes from these people's credit reports when they were reporting them on their own. Well, they testified, did they not, that they made a deliberate decision to regard this language as insufficient to trigger a debt. Exactly. It was intentional. They did not put this information, not put the dispute on the credit report. So it wasn't inadvertent. It was deliberate. Yes. There's no error here. They didn't just overlook the language or miss it. They read all the letters. This isn't a one-off. This is six times, four times in this case, and then also in the Flores and Baranowski cases that were decided after this appeal began. I'm just a little curious that if Mr. Finko is going to send all these letters out, he doesn't just go ahead and use the word dispute, although I recognize that magic terms aren't necessary. Thank you. Yes. And also, I don't know. For what it's worth, the record doesn't reflect why this particular. I don't know if this is a form that the debtors legal court template that the debtors legal clinic had created in the past. It has that aura. Yes, and he's a volunteer attorney, so it might have been this is the most efficient way to go about doing it. Mr. Halecki, could I turn your attention to the letter that you send out to the PRA? Sure. Your second paragraph starts, its initial premise is the client regrets is not able to pay. Why is that relevant to the issue here? Why is it relevant? You're communicating that there's something wrong with the inaccuracy. Why isn't that the initial thrust of the letter? And in the suggestion of the letter, I assume that Mr. Finkel made some assessment of where the claim was inaccurate. So this letter doesn't do anything, does it, to suggest where the inaccuracy lies. It's just a broad statement after saying I can't pay, and by the way, it's inaccurate. I'm just talking about the person who receives that letter getting fully informed of what really is at stake here, that there's a miscalculation or an overcharge or whatever. It's true. The letter doesn't provide the details. But I assume in meeting with the client, you wouldn't send this letter unless you made some examination of the error. It's alleged. I believe the testimony was that each of these people met with a debtor's legal clinic attorney. I think three of the four met with Mr. Finkel personally. I'm sorry. I didn't hear that. Sure. The individuals met with a debtor's legal clinic attorney. I believe three of them specifically met with Mr. Finkel and went over the credit reports before this letter went out. And so an assessment was made. And granted, the details were not provided, but he invites the PRA to open a dialogue with them to try and resolve the matter. He says, if you wish to discuss the matter, please contact our office. Yeah, well, that gives me some pause, too. If their circumstances should change, we'll be in touch. Now, I would read that to say, referring back to the beginning of the paragraph, if I'm able to pay. Maybe I'm misreading it, so you can help me on that. If I'm unable to pay, should I be able to pay, then I'll get in touch with you. That seems to be a little contradictory to me, why you would want to pay if you've got an inaccurate statement. Why is that line there, if the circumstances should change, we'll be in touch? What are the circumstances that you speak of in that case? Perhaps, again, the record doesn't reflect what circumstances he was referring to here, but I can think of a number of different ones. If PRA started to change the amount that they're seeking to collect, I mean, they're still proceeding with collection efforts. They say, oh, we realize we're charging too much, or the fees we added are too high, the interest rate was wrong. Here, we've reassessed, here's what you actually owe, or here's a settlement amount that we want to try and settle the debt for. Any one of a number of things could prompt a change of circumstances, or a change in the circumstances of the debtor's situation. Or they come to the realization that, oh, you know what, I thought this was wrong. It turns out I found the old statements in the box in the back of my basement. It turns out that it was right, even though I had every reason to believe at that moment that it was wrong. Mr. Finko's going off his interactions with the client. He doesn't necessarily have all the facts that there are to be had in the universe, and so something could change. So turning back to the bona fide error defense, PRA decided these letters don't cause disputes, and that's the reason why they violated the law here. At best, it's an error of law, which under the Supreme Court's decision in German versus Carlisle, cannot qualify for the bona fide error defense. And they haven't identified what procedure they had in place to prevent this, whatever alleged error occurred here. As I said, their policy specifically instructs people, you know, the debtor could use any kind of language to indicate a dispute, and so you should be over-inclusive, not under-inclusive, and here they took the exact opposite tact. So even if that was a procedure, they weren't following it. Finally, the district courts correctly concluded that the plaintiffs demonstrated a concrete injury in a number of different ways. One, of course, the risk of harm to plaintiffs' credit rating. This is recognized by the Fifth Circuit in sales versus advanced recovery, Fourth Circuit in Saunders versus branch banking and trust. The Supreme Court in Spokio expressly noted that being exposed to a risk of injury, a risk of real harm, is itself a form of concrete injury. The misreporting of the dispute or the failure to report the dispute is a form of credit defamation. It's defaming the plaintiffs and makes them look like deadbeats, falsely reporting to the bureaus, their existing creditors, and potential creditors, like a potential landlord or employer, that they have this debt that they just refuse to pay for no apparent reason, and it subjects them to a congressionally recognized form of abuse. Spokio recognized that Congress has the power to define injuries that satisfy Article III and confer rights to enforce them or to remedy them, and that's exactly what Congress did with 1692E8. It determined it's abusive, i.e., harmful to misrepresent the disputed status of a consumer's debt on their credit reports, and PRA subjected each of these plaintiffs to that very form of abuse. Unless the Court has any additional questions, I'll yield the rest of my time. I see none, so thank you very much. Thank you very much. Mr. Schultz. Mr. Finko is housed in the same offices as the plaintiff's lawyers here. We tried to pose Mr. Finko to answer the questions you had. We were not allowed to do so. The best that we can tell is he generates these letters, these form letters, a couple different forms. He sends them out, and it generates hundreds and hundreds of lawsuits, fair debt cases, in this courthouse and elsewhere. These were not old debts, Your Honor. These were fairly recent charge-offs from places like Bank of America. It's in the record. Sears, Kmart, it's in the record. There's nothing improper about any of these debts. And, yes, Your Honor, there is a process, as you were asking about, in connection with frivolous disputes or disputes that may not have a valid process, and that would have been what they should have done, which is you proceed under Fair Credit Reporting Act, and you make a dispute. You identify what your dispute is. The credit bureaus then analyze that internally, what they have. They make a request to the furnishers, PRA, to analyze it, and then they get a response. And we would have done that. We would have looked at these records, which were all accurate, and we should have stated the exact same amount as we stated in the report, and it would have been noted as that. There was, or they would have perhaps not honored it at all if it came from a consumer legal clinic. They would have treated it as a debt counselor, as ACA points out. It's probably something they would have just disregarded at all. And run this process into fair debt violations. You can look. I question why they would send these letters. They owe the money. There was no base for it, and my client is being held liable for having the exact, complete, accurate information on the credit report. And you can look at it lots of different ways. I proposed at least four different ways that this could go back to the trial court, or either as a question of fact. Every one of the judges ignored, found it not necessary to review whether or not the debts were accurate, and they were accurate. And the credit reports did not, if you're talking about accurate credit reports, they would have gone through the right process, and they would not have been noted as disputes. All right. Thank you very much, Mr. Schultz. Thanks to both counsel. We will take the case under advisement.